[No. A058170. First Dist., Div. One. Apr. 20, 1994.]

CANDICE J. STEVENSON, Plaintiff and Appellant, v.
SAN FRANCISCO HOUSING AUTHORITY et al., Defendants and
Respondents.

272

COUNSEL

Andrew French Loomis for Plaintiff and Appellant.

McDonald, Cullom & Burland, Jacob Burland and Sally A. Keane for Defendants and Respondents.

## Opinion

**DOSSEE, J.**—This case arises out of the death of Candice J. Stevenson's father in the 1989 Loma Prieta earthquake in San Francisco. Stevenson sued the San Francisco Housing Authority (SFHA) and the owners of the building in which her father lived at the time of the injury which led to his death, alleging various causes of action. Stevenson appeals from the trial court's dismissal of SFHA from the action following the sustaining of SFHA's demurrer without leave to amend. We hold that state law immunities shield SFHA and its employees from liability for negligent inspections and that federal housing laws do not preempt the state immunities.

### Factual and Procedural Background

"In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] . . .' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.]" (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) Bearing this standard in mind, we accept as true the following facts as alleged in appellant's sixth amended complaint.

Appellant's father, Joseph Stevenson, lived at 355 Fulton Street at the time of the October 17, 1989, Loma Prieta earthquake. Joseph's tenancy was pursuant to a lease agreement with defendants Fulton Street Association (Landlord), dated June 1, 1985. A portion of Joseph's rent was subsidized by the federal government pursuant to the section 8 Existing Housing Program of the United States Department of Housing and Urban Development (HUD). (42 U.S.C. § 1437f, hereafter sometimes referred to as Section 8.) Landlord participated in the Section 8 program pursuant to a contract with SFHA. SFHA received federal funds from HUD pursuant to an annual contributions contract.

Appellant's complaint alleged that the 355 Fulton Street building was constructed over a creek, which resulted in a defective foundation. Structural defects in the building, existing at the time of the 1989 earthquake, caused the building to shake so violently that the walls, ceiling, and objects attached thereto became loose and were flung, broken, and shattered throughout the apartment. One of these flying objects struck Joseph and knocked him to the ground, thereby causing serious head injuries. Joseph was unable to move from his apartment and was not discovered by the building manager until seven days after the earthquake. He died in February of 1990 as a result of

his injuries and the dehydration which occurred in the seven days between the earthquake and his rescue.

On April 12, 1990, appellant filed a claim with the City of San Francisco pursuant to the provisions of Government Code section 910. On May 24, 1990, she filed a complaint in superior court against the owners of the building, SFHA, two employees of SFHA (Ashley Rhoades and D.E. Smith), and others. Following a series of amended complaints, the sixth amended complaint was filed on January 21, 1992, alleging five causes of action. The first cause of action alleged breach of the implied warranty of habitability. The second cause of action was for negligent failure to disclose latent defects in the building. The third cause of action alleged breach of a duty established by federal statute to inspect the premises for structural soundness. The fourth cause of action alleged negligent failure to inspect the building. The fifth cause of action alleged breach of an oral contract between Joseph and SFHA's agent, Donald Smith, pursuant to which Smith agreed to routinely monitor Joseph's health and safety.

SFHA filed a demurrer arguing appellant was barred from raising theories that were not described in her written claim, that a tenant has no right of action for breach of the implied warranty of habitability against a housing authority, that SFHA was immune from tort liability for the negligence causes of action pursuant to Government Code sections 815 and 818.6, and that the cause of action for breach of contract violated the integration clause in Joseph's lease and failed to allege consideration.[1] The trial court sustained the demurrer without leave to amend and dismissed the action as to SFHA. Appellant filed a timely notice of appeal.

## DISCUSSION

The main issue raised by this appeal is whether SFHA's governmental immunity from liability for the tort causes of action alleged in appellant's complaint is preempted by federal regulation of low income housing. The parties assert preliminary arguments regarding the need for a statement of grounds supporting the ruling on SFHA's demurrer and the effect of a variance between appellant's claim and the allegations of her complaint. We

---

[1]In her opposition to SFHA's demurrer, appellant stated that she did not intend the first cause of action to apply against SFHA. She noted there that her cause of action for breach of the implied warranty of habitability was intended to apply only to the actual owners of the building. In her brief on appeal, she states that this concession was not intended to waive her claim that Joseph was an intended third party beneficiary of the housing assistance contract between Landlord and SFHA. However, she has not argued this third party beneficiary theory either below or on appeal. In the absence of any argument on this point, we deem it to be waived.

address these preliminary matters prior to our discussion of the preemption issue.

*Statement of Grounds for Sustaining Demurrer*

■ Appellant argues that the trial court failed to state the grounds for its decision. Code of Civil Procedure section 472d provides: "[w]henever a demurrer in any action or proceeding is sustained, the court shall include in its decision or order a statement of the specific ground or grounds upon which the decision or order is based . . . ." In the instant case, the March 20 minute order stated "the court adopted its tentative ruling as set forth below. (Failure to state a cause of action) . . . Sustain without leave to amend." The formal written order did not include the grounds for the decision. At the time the demurrer was argued, the court stated: "The demurrer is sustained without leave to amend for failure to state a cause of action."

The court's direction, entered in writing in the minutes, constitutes an order. (Code Civ. Proc., § 1003.) Code of Civil Procedure section 430.10 sets out the eight statutory grounds for a demurrer. Failure to state facts sufficient to constitute a cause of action is one of those grounds and is the one properly specified by the trial court herein. (Code Civ. Proc., § 430.10, subd. (e).) (*Mautner v. Peralta* (1989) 215 Cal.App.3d 796, 801 [263 Cal.Rptr. 535] [complaint "does not state facts sufficient to state a cause of action" held sufficient compliance with section 472d].) Appellant's claim that she is entitled to a more detailed recitation of the court's reasoning is incorrect. (*Berkeley Police Assn. v. City of Berkeley* (1977) 76 Cal.App.3d 931, 943 [143 Cal.Rptr. 255] [plaintiff not entitled to notice of judge's reasoning or motive].) There was no error in stating the grounds for the court's decision.

*Variance Between Claim and Complaint*

■ SFHA argues that there is a material variance between appellant's written claim pursuant to Government Code section 910 and the facts and theories alleged in her complaint. If this is true, appellant may be barred from asserting a different factual basis in her complaint. (*Fall River Joint Unified School Dist. v. Superior Court* (1988) 206 Cal.App.3d 431 [253 Cal.Rptr. 587].) Government Code section 945.4 provides that ". . . no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented . . . until a written claim therefor has been presented to the public entity and has been acted upon . . . ." Appellant filed a claim with SFHA which contained the elements such as date, place, time, and circumstances of the injury as specified by

statute. (Gov. Code, § 910.) The claim also included an attachment which identified various theories of liability.

Appellant's claim, attached as an exhibit to her complaint, states that "Mr. Joseph Stevenson fell in his apartment during the earthquake and was not discovered until 7 days later. He suffered injuries which subsequently resulted in his death on February 9, 1990. (See attached.)" The attachment sets out appellant's theories of liability for negligence.[2] Appellant's complaint alleges causes of action for: (1) negligent failure to disclose latent defects in the walls, ceilings, and foundation, and building code violations; (2) breach of a statutory duty to inspect the premises for safety and structural soundness; and (3) negligent failure to inspect the building to ensure that it was safe. The factual allegations were that the defective condition of the building and the failure to discover appellant's father caused the fatal injuries.

SFHA argues that appellant's written claim focused on events that took place after the earthquake, while her complaint focuses on a failure to inspect and warn of defects prior to the earthquake. This argument relies upon cases which have held that plaintiffs may not include causes of action in their complaints that have not been fairly reflected in the written claim submitted to public entities. (*Fall River Joint Unified School Dist.* v. *Superior Court, supra,* 206 Cal.App.3d 431; *Donohue* v. *State of California* (1986) 178 Cal.App.3d 795 [224 Cal.Rptr. 57]; *Lopez* v. *Southern Cal. Permanente Medical Group* (1981) 115 Cal.App.3d 673 [171 Cal.Rptr. 527]; *Turner* v. *State of California* (1991) 232 Cal.App.3d 883 [284 Cal.Rptr. 349].)

In *Fall River Joint Unified School Dist.* v. *Superior Court, supra,* 206 Cal.App.3d 431, cited by SFHA, the court limited the plaintiff to the facts alleged in the written claim. In that case, the claim stated that plaintiff had been injured when a door closed with sufficient force to slam his head against the door frame. (*Id.,* at p. 434.) The complaint alleged that the school district was liable for failure to supervise students who were engaged in "dangerous 'horse-play' " which caused plaintiff's injury. The *Fall River* court stated that negligently maintaining an unsafe door was not the "factual

---

[2]The claim describes the theories as follows: "1. *Negligence:* Due to the carelessness and recklessness of the San Francisco Housing Authority, Joseph Stevenson, after having fallen during the earthequake, [*sic*] was not discovered until seven (7) days later. The San Francisco Housing Authority breached their [*sic*] duty to investigate the premises in an effort to locate injured individuals. . . . [¶] 2. *Premises Liability:* San Francisco Housing Authority is also liability [*sic*] to the claimant . . . in that they [*sic*] negligently owned, maintained, managed and operated the premises located at 355 Fulton Street. . . . [¶] 3. *Breach of Contract:* [between Landlord and SFHA] in which they agreed to inspect the premises within 48 hours from the date of an emergency . . . ." We note that the Government Code sections regarding public entity liability do not affect liability based on contract. (Gov. Code, § 814.)

equivalent" of failing to halt forbidden student horseplay, and directed the trial court to grant a motion for judgment on the pleadings as to the failure to supervise cause of action. (*Id.*, at p. 437.)

*Donohue* v. *State of California, supra,* 178 Cal.App.3d 795, also cited by SFHA, involved a claim that the Department of Motor Vehicles negligently allowed an uninsured motorist to take a drivers' examination. The court held that allegations of negligent failure to supervise the motorist and keep a proper lookout during the examination were not the "factual equivalent" of the allegations in the written claim. (*Id.*, at p. 804.) The *Donohue* court found that the factual basis for recovery alleged in the complaint was not reflected in plaintiff's written claim.

*Lopez* v. *Southern Cal. Permanente Medical Group, supra,* 115 Cal.App.3d 673, involved a variance between a claim for negligent failure to revoke a drivers' license from a driver who suffered lapses of consciousness, and a complaint which alleged failure to revoke the license for noncompliance with accident reporting laws. The court found that the complaint alleged facts not contained in the claim. (*Id.*, at p. 677.)

*Turner* v. *State of California, supra,* 232 Cal.App.3d 883, involved a claim for failure to take precautions against gang-related violence and a complaint alleging inadequate lighting as a dangerous condition. The court held that a general reference to "dangerous conditions of property" in the claim was not sufficient to include the allegation of inadequate lighting. (*Id.*, at p. 890.) Read in its entirety, the claim identified the dangerous condition as known criminal activity, not inadequate lighting. The court found this to be an entirely different set of facts from those stated in the claim.

*Fall River, Donohue, Lopez,* and *Turner* are examples of cases in which the claim and the subsequent complaint referred to different factual circumstances. Those courts precluded actions which were based on a different set of facts than was referenced in the claim to the public entity. In other cases, courts have found that apparent differences between the complaint and the claim were merely the result of a plaintiff's addition of factual details or additional causes of action. This type of variance is not fatal where the basic facts are set out in the claim.

An example of an acceptable variance is found in *Blair* v. *Superior Court* (1990) 218 Cal.App.3d 221 [267 Cal.Rptr. 13]. The court in that case described the complaint as one that did not represent a "complete shift in allegations." (*Id.*, at p. 226.) *Blair* concerned an automobile accident in which the driver lost control on an icy highway, left the road and collided

with a tree. The claim against the Department of Transportation stated that the accident was caused by negligent maintenance and construction of the highway, as well as failure to apply sand to the highway. (*Id.*, at p. 223.) The complaint added allegations that there was no warning of the ice on the road, that there was no guard rail where the road crossed a stream, and that the slope of the road was such as to cause a car striking ice on the road to slide off into the trees. (*Id.*, at p. 224.) The court held that the plaintiff was not required to state the legal cause of the accident in the claim and that the allegations of the complaint were premised on the same foundation set forth in the claim. (*Id.*, at pp. 225-226.) The court stated that cases which found a fatal variance between the claim and the complaint involved a "complete shift in allegations, usually involving an effort to premise civil liability on acts or omissions committed at different times or by different persons than those described in the claim." (*Id.*, at p. 226.)

In *White* v. *Superior Court* (1990) 225 Cal.App.3d 1505 [275 Cal.Rptr. 706], Division Three of this court surveyed several decisions which analyzed the need for a complaint's allegations to be fairly reflected in the claim filed with a public entity. The court reasoned that the addition of new allegations in the complaint was not fatal unless they were based on an entirely different set of facts. (*Id.*, at p. 1510.) The claim in *White* stated that a bus driver was falsely arrested and beaten by a police officer. The subsequent complaint alleged causes of action for false imprisonment and negligent hiring, training, and retention of the police officer. The court stated that although the claim did not specify a legal theory of failure to train, it identified the police officer's acts as the principal cause of the injury.

We believe that the instant case is closer to *White, Blair,* and *Smith* v. *County of Los Angeles* (1989) 214 Cal.App.3d 266 [262 Cal.Rptr. 754], cited in *White,* than the cases cited by SFHA.[3] Although the legal theories in appellant's complaint were more detailed, the written claim referenced Joseph Stevenson's fall in his apartment during the earthquake and negligent maintenance of the premises. The addition of details regarding the precise condition of the building and the failure to inspect and/or disclose the defective condition of the premises are elaborations on the facts stated in the claim. These additional allegations were not based on a different set of facts from those set out in the claim and are fairly included within the facts first noticed in the claim.

---

[3]In *Smith* v. *County of Los Angeles, supra,* 214 Cal.App.3d 266 the claim said the county had cut a road into a hill which undermined plaintiff's home. At trial, plaintiff sought to prove that clearing debris from an earlier slide and water runoff over the road contributed to the damage. The court held that the new allegations concerned matters of maintenance of the road which were included within the claim of improper construction of the road.

*Governmental Immunity and Federal Preemption*

SFHA's demurrer challenged the second, third and fourth causes of action for failing to state facts sufficient to constitute a cause of action on the theory that even if a sufficient duty to inspect the premises was alleged, SFHA was immune from tort liability by reason of the provisions of Government Code sections 815 and 818.6. Appellant responded by arguing that state law tort immunities were preempted by operation of Section 8.[4]

Government Code section 815 provides: "Except as otherwise provided by statute: [¶] (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person. [¶] (b) The liability of a public entity established by this part . . . is subject to any immunity of the public entity provided by statute, including this part, and is subject to any defenses that would be available to the public entity if it were a private person."[5] ■ This code section abolishes common law liability and states that a public entity may only be held liable in tort if a statute declares it to be liable. (Cal. Law Revision Com. com., 32 West's Ann. Gov. Code (1980 ed.) § 815, p. 168.)

Appellant argues that the provisions of federal law which govern Section 8 housing impose on SFHA a duty to inspect privately owned housing for safety prior to selecting it for the federally assisted housing program. (42 U.S.C. § 1437f et seq.; 24 C.F.R. § 882.109 (1993).)[6] Appellant claims that SFHA negligently failed to perform this duty.

---

[4]We realize that the usual mode of analysis would be to determine whether a duty was owed before deciding the issue of whether a statutory immunity applies. (*Williams* v. *State of California* (1983) 34 Cal.3d 18, 22 [192 Cal.Rptr. 233, 664 P.2d 137].) The parties have, however, presented the appeal as one in which the issue of duty is essentially conceded for purposes of the appeal. For reasons of judicial economy, we will address the issue of preemption without determining the preliminary issue. (See, e.g., *Kisbey* v. *State of California* (1984) 36 Cal.3d 415, 418 [204 Cal.Rptr. 428, 682 P.2d 1093]; *Geffen* v. *County of Los Angeles* (1987) 197 Cal.App.3d 188, 192 [242 Cal.Rptr. 492].)

[5]Every kind of governmental entity, including a public authority, is included in the definition of "public entity" for purposes of the California Tort Claims Act. (Gov. Code, § 811.2 and Cal. Law Revision Com. com., 32 West's Ann. Gov. Code (1980 ed.) § 811.2, p. 160.)

[6]42 United States Code section 1437f provides in part that the Section 8 program is established "[f]or the purpose of aiding lower-income families in obtaining a decent place to live and of promoting economically mixed housing, . . ." 24 Code of Federal Regulations section 882.109(f)(1) and (f)(2) provide standards for the structural integrity of Section 8 housing, specifying that "[c]eilings, walls, and floors shall not have any serious defects such as severe bulging or leaning, large holes, loose surface materials, severe buckling or noticeable movement under walking stress, missing parts or other serious damage." Appellant has not provided any regulations regarding inspections for seismic safety or standards for Section 8 housing which pertain to earthquake hazards.

However, Government Code section 818.6 provides: "A public entity is not liable for injury caused by its failure to make an inspection, or by reason of making an inadequate or negligent inspection, of any property, other than its property . . . for the purpose of determining whether the property complies with or violates any enactment or contains or constitutes a hazard to health or safety."[7] ■ When faced with SFHA's reliance on the inspection immunity of section 818.6, appellant argued that the federal Section 8 statutes and regulations preempt the state law immunity of local governmental entities. We accept the apparent concession of the parties that the inspection immunity applies, and address the preemption issue.

■ The United States Supreme Court has established three circumstances in which federal law preempts state law under the supremacy clause.[8] "First, Congress can define explicitly the extent to which its enactments pre-empt state law." (*English* v. *General Electric Co.* (1990) 496 U.S. 72, 78 [110 L.Ed.2d 65, 73-74, 110 S.Ct. 2270].) ■ The instant case is not a situation of express preemption. The purpose of Section 8 is to provide rent subsidies to needy families in existing housing. (*Holbrook* v. *Pitt* (7th Cir. 1981) 643 F.2d 1261, 1271.) The statute authorizes the federal government or local housing authorities to contract with private landlords to rent to approved lower income families for a federally subsidized rent. (*Morrisania II Associates* v. *Harvey* (1988) 139 Misc.2d 651 [527 N.Y.S.2d 954, 956].) The federal laws and regulations establishing and governing the Section 8 assistance payments program make no express mention of preemption of state law on the same subject. (*Attorney General* v. *Brown* (1987) 400 Mass. 826 [511 N.E.2d 1103, 1105]; cf. *Ayers* v. *Philadelphia Housing Authority* (3d Cir. 1990) 908 F.2d 1184, 1189 [no express preemption in federal homeownership program].)

■ The second circumstance in which preemption is found is where state law "regulates conduct in a field that Congress intended the Federal Government to occupy exclusively. Such an intent may be inferred from a 'scheme of federal regulation . . . so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,' or where an Act of Congress 'touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.' [Citation.]" (*English* v. *General Electric Co.*, *supra*, 496 U.S. 72, 79 [110 L.Ed.2d 65, 74].) ■ This circumstance is not present in the instant case, because the Section 8 legislation

---

[7]Government Code section 821.4 provides a similar immunity for government employees who fail to make inspections or who perform negligent health and safety inspections.

[8]Article VI, clause 2 of the United States Constitution provides: "This Constitution, and the laws of the United States which shall be made in pursuance thereof . . . shall be the supreme law of the land; and the judges in every state shall be bound thereby, any thing in the Constitution or laws of any state to the contrary notwithstanding."

"envisions participation by States in the implementation of the program, thus, reducing the persuasiveness of the argument in favor of preemption." (*Attorney General* v. *Brown, supra,* 511 N.E.2d 1103, 1105-1106; *Marine Terrace Assoc.* v. *Zeimbekis* (1984) 122 Misc.2d 921 [472 N.Y.S.2d 287] [Section 8 tenant entitled to benefit of nonconflicting state housing law].)

 The third circumstance in which preemption is found is where a state law actually conflicts with federal law. (*English* v. *General Electric Co., supra,* 496 U.S. 72, 79 [110 L.Ed.2d 65, 74].) "Thus, the Court has found pre-emption where it is impossible for a private party to comply with both state and federal requirements . . . or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' [Citations.]" (*Ibid.*) Appellant argues that this category of pre-emption applies in the instant case. Appellant's complaint alleges that Section 8 imposes a duty on SFHA to inspect private dwellings included in the Section 8 program and to discover defective walls, ceilings, and foundations.[9] Appellant argues that SFHA's statutory immunity from tort liability for negligent inspections pursuant to Government Code section 818.6 is in direct conflict with the duty to inspect imposed by federal law. Appellant misunderstands the concept of preemption.

Cases cited by the parties provide examples of when federal and state laws conflict in a manner requiring federal law to be given precedence under the supremacy clause. For example, in *Fidelity Federal Sav. & Loan Assn.* v. *De La Cuesta* (1982) 458 U.S. 141 [73 L.Ed.2d 664, 102 S.Ct. 3014], the court held that a Federal Home Loan Bank Board regulation allowing federal banks to include due-on-sale clauses in loan instruments preempted a state limitation on due-on-sale clauses. The conflict between the state and federal law was clear in that state law limited the enforcement of a federally permitted security device. In addition to the fact that the federal regulation expressed the intent to preempt state law, application of the state limitation created an obstacle to accomplishment of the federal purpose of the due-on-sale regulation. (*Id.,* at pp. 154, 156 [73 L.Ed.2d at pp. 675-676, 677].)

In *Smith* v. *Alum Rock Union Elementary School Dist.* (1992) 6 Cal.App.4th 1651 [8 Cal.Rptr.2d 399], a state law excluded school teachers over age 60 from eligibility for state retirement system disability allowances.

[9]24 Code of Federal Regulations section 882.116(o) (1993) provides that the public housing authority (PHA) is responsible for "[i]nspections prior to leasing and inspections at least annually to determine that the units are maintained in Decent, Safe, and Sanitary condition, and notifications to Owners and Families of PHA determinations." Furthermore, the PHA is required to inspect a unit for "compliance with the PHA's housing quality standards . . ." and to advise the owner of work that must be done to bring the unit into compliance. (24 C.F.R. § 882.209(h)(1) & (h)(2).)

The court held that the law directly conflicted with provisions of the federal Age Discrimination in Employment Act, which prohibits age-based discrimination.

*Ayers* v. *Philadelphia Housing Authority, supra,* 908 F.2d 1184 involved state regulation of real estate foreclosures and evictions as applied to occupants of federally funded housing. The state law differed significantly from the federal regulations regarding termination and eviction of families enrolled in a federal low income homebuyer's program. (*Id.,* at p. 1192.) The state provisions regarding notice and the timing of default conflicted with the federal interest in helping low income families overcome deficiencies in payment. In light of the direct conflict and differing purposes of the state and federal laws, the court found the state laws were preempted in this context.

Other cases cited by appellant also involve direct conflicts in the content and purpose of the state and federal laws at issue. (*Garcia* v. *San Antonio Metro. Transit Auth.* (1985) 469 U.S. 528 [83 L.Ed.2d 1016, 105 S.Ct.1005] [local public transit authority not immune from federal minimum wage laws]; *Baylson* v. *Disciplinary Bd. of Supreme Court of Pa.* (3d Cir. 1992) 975 F.2d 102 [local rule requiring prior approval of grand jury subpoena preempted where inconsistent with federal rules on same subject]; *Greenwood Trust Co.* v. *Com. of Mass.* (1st Cir. 1992) 971 F.2d 818 [state law prohibiting late charge on credit card customers preempted by federal law allowing such charges].)

Examination of these cases leads to the conclusion that no prohibited conflict exists here. A state housing authority is completely able to comply with federal law while maintaining its state law tort immunity. Federal regulations provide that where the owner fails to maintain a Section 8 unit in safe condition, a housing authority "may exercise any of its rights and remedies under the Contract, including termination of housing assistance payments . . . and termination of the Contract." (24 C.F.R. § 882.211(c).) The contract between SFHA and the owner in the instant case provided that SFHA's rights and remedies in the event of the owner's failure to perform its obligations are to recover overpayments, terminate or reduce federal assistance payments and to terminate the contract. Obviously, the public entity may continue to perform inspections and implement the enforcement mechanisms recognized by federal law without accepting tort liability for negligence in discovering defects.

Neither is this a case where state law stands as an obstacle to accomplishment of the objectives of Congress in enacting Section 8. As previously noted, the purpose of Section 8 is to aid low income families in obtaining a

decent place to live, not to provide a cause of action against state government for negligent inspections.[10] The purpose of the state law immunity actually complements the federal inspection regulations. "Because of the extensive nature of the inspection activities of public entities, a public entity would be exposed to the risk of liability for virtually all property defects within its jurisdiction if this immunity [pursuant to Government Code section 818.6] were not granted." (Cal. Law Revision Com. com., 32 West's Ann. Gov. Code (1980 ed.) § 818.6, pp. 217-218.) ■ The inspection immunity is absolute, and applies even where the duty to inspect is deemed to be mandatory. (*Cochran* v. *Herzog Engraving Co.* (1984) 155 Cal.App.3d 405, 411 [205 Cal.Rptr. 1].)

*Muses* v. *Housing Authority* (1948) 83 Cal.App.2d 489 [189 P.2d 305] and *Harper* v. *Vallejo Housing Authority* (1951) 104 Cal.App.2d 621 [232 P.2d 262], cited by appellant as support for the contention that housing authorities in general are liable for their torts are inapplicable. Both cases preceded adoption of the California Tort Claims Act, and consequently did not involve a consideration of the express statutory immunity involved in this case. In addition, both cases involved housing authorities that owned the housing projects in which the plaintiffs were injured. By its terms, the inspection immunity of Government Code section 818.6 does not apply when the public entity's own property is involved.[11] SFHA did not own the apartment in which appellant's father resided.

Based on our review of the cases discussing federal preemption, we find no preemption of the immunity for injury caused by inadequate or negligent inspections of property.

[10]This statutory purpose of lending monetary assistance to families seeking adequate shelter distinguishes the instant case from cases finding a private right of action or those refusing to apply state law immunities in cases brought under the civil rights provisions of 42 United States Code section 1983. The express purpose of section 1983 is to provide a federal remedy for the enforcement of federal rights. (*Wright* v. *Roanoke Redev. & Housing Auth.* (1987) 479 U.S. 418, 429 [93 L.Ed.2d 781, 791-792, 107 S.Ct. 766].) "A construction of the federal [civil rights] statute which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise; . . ." (*Martinez* v. *California* (1980) 444 U.S. 277, 284, fn. 8 [62 L.Ed.2d 481, 488-489, 100 S.Ct. 553].) While section 1983 provides an express guarantee that a citizen will have a federal remedy where persons acting under state law violate that person's civil rights, Section 8's purpose is to supply financial aid to low-income families to enable them to obtain "a decent place to live." (42 U.S.C. § 1437f(a).) Although a state law tort immunity would completely destroy the cause of action granted by section 1983, it has no such nullifying impact on section 1437f.

[11]Government Code section 830, subdivision (c) defines " 'Property of a public entity' " as "property owned or controlled by the public entity, . . ." Although appellant's complaint alleges that SFHA and others were owners of the building, the lease attached to the complaint shows that another defendant owned the property. Appellant has not argued that SFHA engaged in any activity that would constitute "control" for purposes of section 830.

*Breach of Contract Claim*

■ Appellant's fifth cause of action alleged that SFHA's agent, Donald Smith, entered into a contract pursuant to which Smith agreed to routinely monitor appellant's father's health and safety. The complaint alleged that Mr. Stevenson performed his obligations under the oral contract but that Smith breached the contract by failing to check on Stevenson's condition following the earthquake. SFHA's demurrer argued that the contract was not described in appellant's claim and that there was no consideration alleged for the oral contract.[12] In response, appellant argues only that she should be allowed to amend her complaint once again to allege the existence of consideration for the oral agreement. She does not indicate that she is actually able to allege such facts or what the consideration might have been. "The statutory presumption of consideration . . . does not, of course, apply to an oral contract. In an action on such an agreement, the essential element of consideration must normally be alleged. [Citation.]" (4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 474, p. 511.) The instant pleading does not disclose mutual promises or any other indication of consideration. We find no error in the denial of appellant's request to amend after having seven previous chances to state a cause of action.

CONCLUSION

The judgment entered after the sustaining of SFHA's demurrer without leave to amend is affirmed.

Strankman, P. J., and Newsom, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 14, 1994.

---

[12]SFHA also argued that if appellant contended that the oral contract was a part of the written lease, the integration clause in the lease prohibited oral modifications.